MRS. CATHERYNE P. CLAIBORNE v. MRS. J. L. TAFF et al.

Western Section. March 29, 1929.

Petition for Certiorari denied by Supreme Court, July 19, 1929.

Frank C. Lee, of Memphis, for appellant.
U. A. Burgess, of Memphis, for appellee.

SENTER, J. This suit grew out of an exchange of property between complainant and the defendants. Mrs. Catheryne P. Claiborne, the complainant, was the owner of an apartment house, located on Tutwiler street in the City of Memphis. The defendant, Mrs. J. L. Taff, was the owner of two duplex bungalows, situated on Murrey street in the City of Memphis. These two bungalows were encumbered at the time of the exchange, and the complainant as a part of the consideration assumed the payment of the encumbrance debts against the same, and the defendants to pay the difference amounting to $3500, and executed a series of notes

amounting to said sum, and secured the same by a trust deed on the Tutwiler street property which they took in exchange from complainant, and complainant sold these notes.

The bill charges that the complainant was a woman of limited business experience, and had had no experience or knowledge of building construction; that she was induced to enter into the contract and the exchange of property on the representations made to her by the defendant, Mrs. J. L. Taff, and Mrs. Loeb, alleged in the bill to have been the real estate agent representing Mrs. Taff in negotiating the trade; that the property was represented to her as being well built houses, with adequate heating system, and constructed of good materials, and well constructed; that soon after she purchased the property she discovered that the houses were poorly constructed, of poor materials; that the concrete basements were of faulty construction, admitting large quantities of water, that the furnaces were too small, and that the radiation was insufficient; that the houses were built on new dirt and did not rest on substantial foundations, causing the porches of the buildings to crack and fall away from the houses, and the columns supporting the roof to lean, and the front part of the houses to sag. Other allegations are contained in the bill relative to the defective condition of the houses. The defendants deny all the material allegations in the bill, and deny all allegations of fraud or misrepresentation, and the answer avers that Mrs. Loeb was also the agent of complainant in negotiating the trade between them, and that Mrs. Loeb also had complainant's property listed for sale or exchange, and that Mrs. Loeb was the close personal friend of complainant. The answer denies that complainant is entitled to recover anything of the defendants on account of said trade, or on account of the alleged faulty materials and construction of the building.

Quite a mass of evidence was taken by the respective parties on the various phases and allegations and issues. At the hearing of the cause the Chancellor found the facts in favor of the contention of the defendants, and decreed a dismissal of complainant's bill, at the cost of complainant. From this decree complainant has appealed to this court and has assigned numerous errors. Several of the assignments of error go to the conclusions of fact as found by the Chancellor, and some of them present questions of law on the admissibility of evidence, and also as to the application of the facts to the law.

There is a full and complete finding of the facts by the Chancellor contained in the record.

On October 2, 1926, the defendants were the owners of the two duplex bungalows involved, and this property was encumbered by a first mortgage on the respective buildings for the sum of $6500 each, and a second mortgage of $1500 each. The complainant owned

the property on Tutwiler street, and her property was encumbered by a mortgage to secure an indebtedness of $6000. It appears that Mrs. Loeb was engaged as a real estate agent in the City of Memphis, and had the property of complainant and also the property of the defendants, listed for sale or exchange. She worked up the trade between the parties, resulting in a written contract signed by the respective parties, dated October 15, 1926. This contract designates Mrs. Catherine Taff as the party of the first part, and Mrs. Catheryne Claiborne as the party of the second part. By the terms of this contract, Mrs. Taff contracted and agreed to convey by warranty deed to Mrs. Claiborne the two bungalows described therein, on a valuation basis of $11,000 each, subject to a first mortgage loan on a fifteen-year plan of $6500 on each building and a second mortgage of $1500 on each building, the said second mortgages payable at the rate of $25 per month with 6% interest. Mrs. Taff also agreed and contracted to deliver to Mrs. Claiborne four leases and lease notes running to September 1, 1927, on the two described bungalows, the rents beginning November 1, 1926, and said leases to be for $50 per month for each apartment, or $200 total per month for the two duplex bungalows. She further contracted and agreed that the guarantees on the heating and plumbing from the companies who installed the same would be turned over to Mrs. Claiborne. Mrs. Claiborne contracted and agreed to convey by warranty deed to Mrs. Taff the apartment located at 1818 Tutwiler, subject to a first mortgage loan of $6000 bearing interest at the rate of 6%, interest payable semi-annually, and which mortgage debt Mrs. Taff assumed. The Tutwiler property was valued at $15,500. Mrs. Claiborne agreed to deliver to Mrs. Taff two leases and lease notes on the Tutwiler property, beginning with November 1, 1926, and running to September 1, 1927, for $70 per month for each apartment. Mrs. Taff agreed to give to Mrs. Claiborne a first mortgage back on the Tutwiler street property to secure $3500, payable monthly, with interest at 6%, in the adjustment of the difference in the value of the equities in the respective property. Both parties contracted that there were no liens or assessments of any nature against the respective properties, and they both agreed to furnish abstracts on their respective properties, allowing five days for examination. The contract further provided that all taxes for the year 1926 to be paid by the respective sellers, and that this provision would be made in the respective deeds, and all prior tax receipts to be delivered. It was further provided that both parties would pay to Mrs. Mary E. Loeb the regular commission for negotiating the trade, except $100 be taken off of Mrs. Taff for decoration of the Tutwiler street property.

Pursuant to this contract, abstracts of title were furnished by the respective parties, and the transaction completed by the execu-

tion of deeds by the respective parties to the respective properties, as provided in the contract, and the deeds of the defendant to the complainant were executed on November 1, 1926, but the deeds were delivered by the respective parties on November 24, 1926.

It appears that Mrs. Taff purchased five duplex bungalows from a Mrs. Glassman, who had built ten bungalows of similar type, and sold or exchanged five of these to Mrs. Taff at a valuation of $11,000 each. The buildings were not fully completed when Mrs. Taff contracted for five of them. Mrs. Taff obtained this property from Glassman on October 2, 1926. Within a few days after Mrs. Taff acquired the five bungalows, Mrs. Loeb, the real estate agent, became interested in working up the trade between Mrs. Taff and Mrs. Claiborne, resulting in the contract between them, and the ultimate consummation of the trade by the exchange of the deeds, etc. It appears that some time during the summer of 1926, the complainant had listed her Tutwiler street property with Mrs. Loeb. Mrs. Loeb was the close personal friend of the complainant and she had also represented the defendants in real estate matters. Before the contract was entered into between the parties, Mrs. Loeb in company with Mrs. Taff, showed these two duplex bungalows to Mrs. Claiborne. Mrs. Claiborne made a personal inspection of the property before she signed the contract. Neither Mrs. Claiborne, nor Mrs. Taff, seemed to have had any previous experience in building construction or building materials, but Mrs. Loeb, who had been for some time actively engaged in the real estate business, seemed to have had some knowledge and experience in building construction and building materials.

Mrs. Taff did not build these bungalows, and it does not appear that she had any previous knowledge of these buildings until she had the transaction with Glassman, the owner and builder. The bungalows were then occupied by tenants, and were practically completed at the time she traded for them. In her trade with Glassman these bungalows were valued to her and taken in by her in the trade at $11,000 each.

Much stress is put upon the alleged representation as to the net amount of rentals that complainant would receive from these buildings at $200 per month gross, and that it was represented to her that after meeting the installment payments, interest, etc., there would remain a net balance of about $83 per month to her, and in her financial circumstances this was the principal inducement to her in making the purchase, but in fact, after paying the installments on the encumbrance debts, and the interest, etc., it only left a net balance of $20 per month. We think a complete answer to this is, that if any such representations were actually made preceding the execution of the contract and the exchange of

deeds, that it was a mere matter of simple calculation, since the contract, and also the abstract of title furnished to Mrs. Claiborne, and the deeds, set out the encumbrance debts, and the payments, interest, etc. It was certainly not a warranty to that effect, but at most it was but an estimate. The gross rental for the two buildings was $200 per month, and there was no misrepresentation as to this item, and by a supplemental contract there was a full adjustment on the matter of procuring the fourth tenant at $50 per month from November 1, 1926, to September 1, 1927. The defendant, Mrs. Taff, agreed in the contract to turn over leases from four tenants at $50 per month each, beginning November 1, 1926, and continuing to September 1, 1927. She delivered three of the leases, and by the supplemental contract took care of the fourth lease. This was the extent of her contractual obligation with reference to the leases, and the question of what amount of the $200 per month would be net to Mrs. Claiborne, after paying the monthly installment indebtedness on the property, was readily to be ascertained from the provisions of the mortgage securing the indebtedness, and a simple calculation, and could not have operated as a representation intended to deceive or mislead, and to have the dignity of a guarantee.

A large part of the evidence is on the subject of the defective condition of the basements and the heating system in the respective buildings. It appears that the basements seeped some water, and it also appears that these basements were of usual construction, with concrete walls and floors, and that water seeped through the concrete from excessive rains. This was true of most basements in Memphis following excessive rains during the fall and winter of 1926-1927. The evidence shows that the basement in the Tutwiler property exchanged by Mrs. Claiborne also seeped water during the winter of 1927 and was rendered damp. There is no provision in the contract between the parties whereby the basements were warranted to be waterproof. Mrs. Taff did not own these buildings but a short time before she contracted to trade the same to Mrs. Claiborne. She obtained them on October 2, 1926, and the contract was dated October 15, 1926. It appears that the contractor for the heating system gave a written guarantee as to the heating, and the contract provided that this written guarantee would be delivered to the complainant. This was done. At the time the contract was made the heating system had not been tested out, since there had been no cold weather up to that time. Mrs. Claiborne knew as much about the heating as Mrs. Taff, and was as capable of judging its sufficiency. She was protected by the guarantee of the contractor installing the heating system. This was all Mrs. Taff contracted on the subject of the heating system in the two houses. It

also appears that the front part of the houses were built on a fill of new dirt, and that the foundation did not extend to solid earth, and as a result there was considerable swag in the concrete porch and the brick columns due to the settling of the front walls. This condition was not known to Mrs. Taff at the time she purchased the property nor at the time she contracted to sell the same to complainant. It appears that the settling of the foundation was due to the excessive rains making the new earth soft. This caused the concrete porches to crack and break and pull away from the walls, and also the brick columns supporting the porch roof to get out of line. There is evidence of poor mortar used in the brick work, and we think it clear that there was defective materials and construction by the builder, and that it would cost a considerable sum to replace the same and to make the buildings first class in every particular.

However, we do not find from the record that there was any fraud or wilful misrepresentations made by Mrs. Taff as an inducement to complainant to make this exchange of property. It does not appear that Mrs. Taff was overly anxious to make the trade. The contract was signed by complainant several days before Mrs. Taff signed the same, although Mrs. Loeb made more than one visit or call upon Mrs. Taff with the contract after it had been signed by complainant before Mrs. Taff finally signed it.

While it is true that Mrs. Loeb, as a witness for complainant, testified that Mrs. Taff had told her that she had discovered that she had been "stung" in the purchase of the property from Glassman, and knew of the defective construction and materials in the buildings, yet, when it is considered that Mrs. Loeb was the close personal friend and adviser of Mrs. Claiborne, and the record shows this to be true, and she was certainly complainant's strongest and most relied upon witness, it is hardly conceivable that she would have advised her close personal friend to make this trade if she had knowledge that there was anything wrong with the construction and materials used in the buildings. Mrs. Taff denies ever having made any such statement, or that she had any knowledge of any defects either in the quality of the materials or in the construction of the buildings. There is no express or implied warranty on the part of Mrs. Taff contained in the contract or in the deeds, with reference to the materials and the construction of the building. In the absence of fraud, or wilful misrepresentations, intended to deceive or to mislead Mrs. Claiborne, we do not think she would be liable in damages to the complainant on account of the defective materials or defects in construction in the buildings. The contract is free from any ambiguity. No mention is made with reference to materials or the class of construction. Mrs. Claiborne knew

these were new buildings and had but recently been completed at the time she traded for the same. She made a personal inspection of the property before she traded for it. She had the same opportunity of knowing the condition and quality of materials and construction as did Mrs. Taff.

We have carefully examined all the evidence in the record, and fully concur in the finding of the facts as found by the Chancellor. Under the facts as disclosed by the record, and as found by the Chancellor, and in which we fully concur, we find no error in the decree of the Chancellor. It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Owen, J., and Holmes, Sp. J., concur.